## Lawrence v. Lawrence, et al.

(Decided October 24, 1911.)

### Appeal from Shelby Circuit Court.

Homestead—Fraudulent Sale by Step-son—Action to Set Sale Aside.— A judgment having been obtained by a step-son to sell a tract of land in which his step-mother owned a homestead, by his assuring her that he did not intend to deprive her of a home and expected her to remain there in the future as in the past; and he having thus had the land sold and taken out a writ of possession and deeded the land to another; on her petition showing these facts, the judgment and sale should be set aside.

E. B. BEARD, H. K. BOURNE for appellant.

RALPH GILBERT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

William A. Lawrence died intestate, a resident of Shelby county in November, 1907. He left surviving him his widow, Agnes Lawrence, his son, Joseph Lawrence and two daughters, Amy and Annie. He had been married twice; Joseph was the son of the first wife, and the two daughters were the children of the second wife who survived him. He owned at his death a tract of five acres

of land at Pleasureville, Kentucky, on which he resided. Some years prior to his death, he and his wife had executed a mortgage on this land to his son, Joseph Lawrence, to secure a debt of $350.00. On January 7th, 1908, Joseph Lawrence brought a suit against the widow and her two daughters in which he sought to foreclose his mortgage. No defense was made to the action; a judgment was rendered on February 10, by which the plaintiff was adjudged a lien on the land for his debt with interest also for $83.96 taxes which he had paid, and $62.85 for burial expenses which he had paid. The sale was made on March 9, 1908; the property was appraised at $1,200.00 and was bid in by the plaintiff for $801.00. The sale was confirmed and a deed made to the purchaser. Agnes Lawrence, the widow, brought this suit on August 23, 1909, in which she charged that after the filing of the suit referred to, and the service of the summons on her, Joseph Lawrence, her step-son, came to her home, she then living on the tract referred to, and told her that it was not necessary for her to employ counsel or file an answer to the suit; that he would look after and protect her interest in the suit, and that in consideration of her filing no answer he agreed that he would permit her to use and occupy the premises as long as she lived. She also alleged that the land was a homestead and that she was entitled to the possession of it during her lifetime subject to the morgage debt and that Joseph Lawrence had no lien upon the land for the taxes and funeral expenses or an attorney's fee of $60.00, which had been allowed him in the former action; that the property had been sold without her knowing it and was worth $1,500.00 or more; that Joseph Lawrence after he got the deed from the court, had caused an order for a writ of possession to be entered, and that he had since then, for the purpose of defrauding her, conveyed the land to his son, J. Kelly Lawrence, for love and affection and the consideration of $1.00; that J. Kelly Lawrence well knew of the agreement with her, but that he had accepted the deed and had it recorded. She asked that the judgment in the former suit which had thus been obtained from her by fraud, be set aside, and that she be permitted to claim her homestead in the land, and the homestead be adjudged her. Joseph Lawrence filed an answer in which he contraverted the allegations of the petition and on final

hearing the circuit court dismissed the petition. Agnes Lawrence appeals.

The plaintiff testified unequivocally to the agreement between her and the defendant which was set out in her petition. He denied having any such conversation with her but he admitted writing to her the following letter:

"Pleasureville, Ky., Jan. 20, 1908.

Mrs. Agnes Lawrence,

Dear Agnes:

"Yours of date 17th received, in answer will say, after careful thought and consideration I concluded the best thing for all would be for me to hold the title in that home, as I have been protecting it for the last fifteen or sixteen years. I think it will tend to create harmony and reconciliation in the family.

"Not by any means do I intend to deprive you of a home. I will expect you to remain there in the future as in the past. Now in regard to those summons. An answer is only required when the parties expect to resist the suit:

"Hoping that this may meet with your hearty approval, I remain,                    Yours truly,
                    JOSEPH LAWRENCE."

It will be seen by this letter that he tells her that he does not intend by any means to deprive her of a home, and that he expects her to remain there in future as in the past, and that in regard to the summons, an answer is only required when the parties expect to resist the suit. When we consider the relationship between the parties, we can well understand that if this letter was all that took place between the parties, the woman would naturally understand that it was not necessary for her to file an answer in the suit; that the defendant did not intend to deprive her of a home but expected her to remain on the place in the future as in the past. She did not file an answer relying upon his representation, and when no answer was filed, he took a judgment, had the property sold without notice to her, and had the property bought in for $1.00 more than two-thirds of the appraisement, so as to prevent a redemption; he then executed a deed to his son, and had a writ of possession awarded.

These facts are sufficient to show that the judgment should not be permitted to stand. She was only entitled to a homestead in the property. When he assured her that she should not be disturbed, but should hold it as

her home as long as she lived, there was nothing more she could get by defending the suit. When she was induced by this assurance to make no defense, and the property was by this means sold without her knowledge, the defendant so obtaining the title cannot be permitted to retain the advantage he thus secured. If he acted in good faith, not intending to mislead her, he is estopped to say that he should be allowed to take the property and turn her out; and if he acted in bad faith, the judgment was obtained by fraud and cannot be permitted to stand. In either view of the matter she is entitled to the relief sought.

As he had a lien on the land for his mortgage debt, he has a lien on it also for the taxes which he paid; for the mortgagee has a right to pay the taxes for the protection of his mortgage lien; but he has no lien on the land for the burial expenses of his father as against his mother's homestead, and should not be allowed a taxed attorney's fee of $60.00. There is considerable conflict in the evidence as to what the land is worth, but we think the best test of that will be another sale, when both parties have notice of it, and the opportunity to bid on the property.

Judgment reversed and cause remanded with directions to set aside the judgment and the sale, and for further proceedings consistent herewith.